McCarthy, Kenney & Reidy, P.C. *vs.* The First National
Bank of Boston & others[1].

Suffolk.    April 7, 1988. — June 20, 1988.

Present: Wilkins, Liacos, Abrams & Nolan, JJ.

*Bank. Negotiable Instruments,* Defenses, Drawer, Forgery, Indorsement.
*Warranty. Negligence,* Bank. *Uniform Commercial Code,* Good faith,
Bank, Defenses, Payment on negotiable instrument, Warranty.

In an action arising from a fraudulent scheme in which a bookkeeper em-
ployed by a law firm prepared numerous checks, never intending to
transmit the checks to the named payees; then secured the signature of
a member of the firm authorized to sign the checks; and, without author-
ity, forged the indorsements of the payees, the law firm was precluded
by G. L. c. 106, § 3-405 (1) (*c*), from recovering from the drawee bank
the amounts it paid on the checks, notwithstanding any negligence or
commercial unreasonableness of the drawee in paying the checks, without
examining the indorsements, in reliance on the warranties of banks that
had preceded it in the collection process, where nothing in the record
of summary judgment proceedings suggested that the drawee lacked
good faith as that term is defined in G. L. c. 106, § 1-201 (19). [633-636]
A drawee bank, claiming breach by three collecting banks of the warranty
of title provided by G. L. c. 106, § 4-207 (1) (*a*), was not permitted to
recover from them the attorney's fees and expenses it had incurred in
successfully defending under G. L. c. 106, § 3-405 (1) (*c*), a drawer's
action for amounts paid on checks bearing forged indorsements, since
*the latter provision permitted the collecting banks to transfer good title
to the drawee notwithstanding the forgeries and thus no breach of
warranty occurred.* [636-638]

Civil action commenced in the Superior Court Department
on December 11, 1984.

The case was heard by *Andrew G. Meyer,* J., on a motion
for summary judgment.

[1] Guaranty-First Trust Company, Indian Head National Bank, and Wal-
tham Savings Bank, third-party defendants.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Allan van Gestel* for the plaintiff.

*Robert L. Klivans* (*Lisa A. Wallace* with him) for The First National Bank of Boston.

*Alan D. Rose* (*Lisa C. Wood & David S. Newman* with him) for Indian Head National Bank.

*Richard A. Savrann,* for Guaranty-First Trust Company, was present but did not argue.

*Melinda Meadow Berman,* for Waltham Savings Bank, submitted a brief.

WILKINS, J. This case concerns the consequences to the parties of the embezzlements of one Mowatt, a former bookkeeper for the plaintiff law firm. Mowatt forged indorsements on checks that had been drawn on the law firm's checking account at the defendant The First National Bank of Boston (First National Bank) and signed by authorized representatives of the law firm. Mowatt cashed or deposited each check at one of the three banks named as third-party defendants. Each check, with a guarantee of the indorsement by the depositary bank, was then presented for collection to the drawee First National Bank, which in turn debited the law firm's account in the amount of each check.

Mowatt's forgeries continued over a period of about one year and a half. When the firm finally uncovered Mowatt's criminal conduct, it asserted that, because the First National Bank had paid out funds in reliance on forged indorsements, the bank should credit its account with the full amount of the loss due to the forgeries. The First National Bank refused to do so, asserting that Mowatt's indorsements were effective under G. L. c. 106, § 3-405 (1) (*c*) (1986 ed.), the provision in the Uniform Commercial Code sometimes called the "fictitious payee" or "padded payroll" exception.[2] The law firm argues that the First National Bank's failure to ascertain the authentic-

---

[2] Section 3-405 (1) (*c*) provides that "[a]n indorsement by any person in the name of a named payee is effective if . . . (*c*) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest."

ity of the indorsements was a violation of the bank's duty to it as a customer and that the bank may not raise § 3-405 (1) (*c*) in defense of its position. Thus the lines are drawn on the issue we shall first discuss, as to which we conclude that the motion judge was correct in allowing summary judgment for the First National Bank.

The second issue we shall consider is the First National Bank's assertion that, because the depositary banks warranted the indorsements (see G. L. c. 106, § 4-207 [1986 ed.]), they are responsible for the First National Bank's litigation costs in this proceeding. The motion judge concluded, we think correctly, that because the law firm could not recover against the First National Bank and the defense of § 3-405 (1) (*c*) was available to all the banks, the three collecting banks were entitled to summary judgment on the First National Bank's claim against them for reimbursement of its reasonable attorneys' fees and costs. We transferred the respective appeals to this court on our own motion.

We shall first expand on the facts of the case. The law firm had a bank account at the First National Bank, and certain lawyers in the law firm were authorized to sign checks on that account. The law firm transferred funds for the operation of its Lowell office by checks drawn on that account and made payable to the partner in charge. The law firm also had a checking account at another Boston bank which was used to pay small charges in connection with the firm's litigation practice. On numerous occasions, Mowatt obtained the signature of an authorized person at the law firm on checks payable to the partner in charge of the Lowell office or to the other Boston bank, never intending to transmit the checks to the named payee. Mowatt then forged indorsements of the payees without authority of either the drawers or of the payees of the checks, and the three third-party defendant banks honored the checks.[3]

---

[3] The checks payable to the partner in charge of the Lowell office were purportedly signed by that partner and cashed or deposited by Mowatt to his account. The checks payable to the other Boston bank had typewritten indorsements purportedly of that bank and were deposited by Mowatt to his account.

The First National Bank, relying on the warranties of the depositary bank that preceded it in the collection process, accepted each check without examining the indorsements on it, charged the law firm's account accordingly, and remitted the appropriate amount to the depositary bank.

1. The parties do not contest that the facts of this case literally bring the provisions of § 3-405 into play. The law firm would have us rule, however, that § 3-405 (1) (*c*) does not displace (see G. L. c. 106, § 1-103 [1986 ed.]) the former rule in this Commonwealth that a bank had a duty in circumstances such as those in this case to exercise ordinary care to protect its customers by inspecting indorsements for forgeries (see *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 405 [1909]). This argument lacks persuasive force because § 3-405 makes no reference to a bank's negligence as an exception to its application, whereas adjacent sections do acknowledge a bank's standard of care as a relevant factor (see § 3-406 and § 4-406). See *Western Casualty & Sur. Co.* v. *Citizens Bank,* 676 F.2d 1344, 1347-1348 (10th Cir. 1982); *Consolidated Pub. Water Supply Dist. No. C-1* v. *Farmers Bank,* 686 S.W. 2d 844, 852 (Mo. App. 1985). The inference is unavoidable that the drafters of the Code and the Legislature intended to eliminate common law negligence actions against the drawee bank in fictitious payee situations.

The question then is what the proper result is under the Uniform Commercial Code. The Code has a system for allocating losses arising from forgeries on checks. As a general rule, when a *drawer's* signature is forged, the drawee bank will bear the loss. See G. L. c. 106, § 3-418 (1986 ed.); J. White & R. Summers, Uniform Commercial Code § 16-1, at 607 (2d ed. 1980). When, however, an *indorsement* is forged, generally the bank that first paid on the check will bear the loss. This result is achieved through the operation of the Code's warranty provisions. *Id.*; G. L. c. 106, §§ 3-417, 4-207 (1986 ed.). The distinction is justified because "the drawee is in a position to verify the drawer's signature by comparison with one in his hands, but has ordinarily no opportunity to verify an indorsement." Comment 3 to § 3-417 of the Uniform Com-

mercial Code, 2 U.L.A. (Master ed. 1977). Section 3-405 (1) (*c*) of the Code is thus an exception to the general rule governing forged indorsements. This section places the loss on the drawer when an employee supplies him with the name of the payee intending that the named payee have no interest in the check and an indorsement is forged in the name of the named payee. The law firm argues that the First National Bank should nevertheless be denied the benefit of § 3-405 (1) (*c*) because the bank's conduct was negligent, commercially unreasonable, and in bad faith.

The drafters of the Code intended that a bank's negligence not be a factor in the application of § 3-405 (1) (*c*). Comment 4 to § 3-405 of the Uniform Commercial Code, 2 U.L.A. (Master ed. 1977), explains that "the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. The reasons are that the employer is normally in a better position to prevent such forgeries by reasonable care in the selection and supervision of his employees, or, if he is not, is at least in a better position to cover the loss by fidelity insurance; and that the cost of such insurance is properly an expense of his business rather than of the business of the holder or drawee." This comment demonstrates that the absence of any references in § 3-405 (1) to the negligence of the drawee bank was deliberate. Most courts have recognized the immateriality of the negligence of a bank in circumstances covered by § 3-405 (1) (*c*). See *Western Casualty & Sur. Co.* v. *Citizens Bank,* 676 F.2d 1344, 1347-1348 (10th Cir. 1982) (New Mexico law); *Prudential Ins. Co. of Am.* v. *Marine Nat' l Exch. Bank,* 371 F. Supp. 1002, 1003 (E.D. Wis. 1974); *M & K Corp.* v. *Farmers State Bank,* 496 N.E.2d 111, 114-115 (Ind. App. 1986); *Consolidated Pub. Water Supply Dist. No. C-1* v. *Farmers Bank,* 686 S.W.2d 844, 853 (Mo. App. 1985); *Kraftsman Container Corp.* v. *United Counties Trust Co.,* 169 N.J. Super. 488, 494-495 (1979); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Chemical Bank,* 57 N.Y.2d 439, 447 (1982). Contra *E.F. Hutton & Co.* v. *City Nat' l Bank,* 149 Cal. App. 3d 60, 73 n.9 (1983); *Travelers Indem. Co.* v. *Center Bank,* 202 Neb. 294, 297

(1979); J. White & R. Summers, Uniform Commercial Code § 16-8, at 638-639 (2d ed. 1980).[4]

The bank is, however, held to the standard of good faith. See, e.g., *Western Casualty & Sur. Co.* v. *Citizens Bank, supra* at 1347; *Prudential Ins. Co.* v. *Marine Nat'l Exch. Bank, supra* at 1003; *Kraftsman Container Corp.* v. *United Counties Trust Co., supra* at 495. See also Comment 6 to § 4-406 to the Uniform Commercial Code, 2A U.L.A. (Master ed. 1977). Section 1-203 of the Code imposes a general duty on all parties to act in good faith. For the purposes of Article Three, good faith is defined as "honesty in fact in the conduct or transaction concerned." G. L. c. 106, § 1-201 (19) (1986 ed.). There is no element of due care in the concept of good faith. See *Dion* v. *Silver City Dodge, Inc.,* 398 Mass. 58, 60 (1986). Nor is there any requirement of commercial reasonableness in the Code's definition of "good faith." See Braucher, The Legislative History of the Uniform Commercial Code, 58 Colum. L. Rev. 798, 812 (1958). There is nothing in the summary judgment record to suggest that the First National Bank lacked good faith. To accept checks with typed indorsements and not to inspect indorsements on checks may or may not have been negligent or commercially unreasonable conduct, but it does not constitute dishonesty in fact. The bank had no subjective knowledge of the forgeries.

Our task is to construe a portion of a uniform act. The intention of the drafters is reasonably clear. The language of § 3-405 (1) (*c*) seems indifferent to the bank's negligence. The drafters' comment on that section shows an intention to eliminate the bank's negligence as a material consideration in applying § 3-405 (1) (*c*). The fact that a minority of courts have rejected this result should not provide an excuse for us to decide this case solely on the basis of our sense of justice. In commercial transactions, certainty as to what the law is and where the risk

---

[4] The law firm's argument that the bank should not be entitled to rely on § 3-405 (1) (*c*) because the bank acted in a commercially unreasonable manner raises the same question as the claim that the bank's negligence can be considered in a situation covered by § 3-405 (1) (*c*). The answer must be the same.

of loss is placed is often more important than the substance of the law or the allocation of the risk.

2. The First National Bank argues that it is entitled to recover its attorneys' fees and expenses reasonably incurred in the defense of the law firm's action and in pursuing the collecting banks. It relies on G. L. c. 106, § 4-207 (3) (1986 ed.), which provides that a collecting bank that violates a warranty described in § 4-207 may be liable for "expenses related to the item" as to which the collecting bank made warranties. [5] Thus, if the collecting banks had not had the advantage of the fictitious payee defense, they might well have been liable for breach of one or more § 4-207 warranties and their obligation to the First National Bank could have included expenses of the First National Bank in connection with all aspects of the law suit.[6]

Because the fictitious payee defense was applicable, the First National Bank was not liable to the law firm for paying out on forged indorsements, and, for the same reason, the three collecting banks were not liable in turn to the First National Bank. The question is whether § 4-207 (3) authorizes an award of attorneys' fees and expenses to the First National Bank in the circumstances. The case of *Bagby* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 491 F.2d 192 (8th Cir. 1974), on which the First National Bank relies, did not involve a drawee bank with a § 3-405 defense but rather involved the negligence of the drawer (§ 3-406) on which the drawee bank was able to rely to avoid liability to the drawer. The collecting banks had made warranties of which they were in breach, and the court allowed the drawee bank to recover its attorneys' fees and litigation expenses from them, even though the drawee bank prevailed against the drawer. *Id.* at 199.

The First National Bank makes a logical argument that there is no reasonable basis for allowing recovery of attorneys' fees

---

[5] The second sentence of G. L. c. 106, § 4-207 (3), provides: "Damages for breach of such warranties or engagement to honor shall not exceed the consideration received by the customer or collecting bank responsible plus finance charges and expenses related to the item, if any."

[6] The First National Bank tendered the defense of the law firm's claims to the third-party defendant banks, pursuant to G. L. c. 106, § 3-803 (1986 ed.), but they declined the tender.

and expenses against a collecting bank that paid out under a forged indorsement when the drawee bank has successfully defended against the drawer on § 3-406 (drawer negligence) grounds (as in the *Bagby* case), but denying recovery of attorneys' fees and expenses against such a collecting bank when the drawee bank has successfully defended against the drawer on § 3-405 (fictitious payee) grounds (as in this case). In each instance, the greater fault lies with the collecting banks which had a better opportunity than the drawee banks to check the validity of the indorsements (and to decline to accept checks for collection). Each collecting bank in the two situations is fortunate that it avoided liability in the amount of each check it accepted for collection with the payee's indorsement forged. It can fairly be contended that in neither instance should the collecting bank escape liability for the litigation expenses of the drawee bank (at least in defense of the drawer's claims) simply because of its good fortune that the drawee bank had a defense against the drawer and thus did not have to look to the collecting bank for the amount of the checks.

Section 4-207 on which the First National Bank solely relies does not allow this result. That section permits the recovery of attorneys' fees and expenses only if the collecting bank is in breach of a § 4-207 warranty. A collecting bank makes to a payor bank only those warranties described in clause (1) of § 4-207. Of the clause (1) warranties, in turn the only one on which the First National Bank relies is the warranty of the collecting bank that it has "a good title to the item or is authorized to obtain payment . . . on behalf of one who has a good title." § 4-207 (1) (*a*) (1986 ed.). Mowatt's indorsements, made effective by § 3-405, permitted the collecting banks to transfer good title to the checks. Thus the collecting banks were not in breach of a § 4-207 (1) (*a*) warranty. See *Girard Bank* v. *Mount Holly State Bank,* 474 F. Supp. 1225, 1232 (D.N.J. 1979); *Phoenix* v. *Great W. Bank & Trust,* 148 Ariz. 53, 56 (Ct. App. 1985); *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Chemical Bank,* 82 A.D.2d 772, 773 (N.Y. 1981); *Clinton Weilbacher Builder, Inc.* v. *Kirby State Bank,*

643 S.W.2d 473, 476 (Tex. Ct. App. 1982). Consequently § 4-207 (3) does not authorize the payment of attorneys' fees and expenses in this circumstance.

*Judgment affirmed.*