Sherman, PJ.
This action arose from defendant Edward H. Bauerband’s fraudulent procurement of a loan from the plaintiff, Minster State Bank (“Minster”), a banking *62 corporation doing business in the State of Ohio, and from defendant Baybank’s cashing of the check issued by the plaintiff for the proceeds of such loan.
Minster instituted this action in three counts.[2] Count III alleged that defendant Baybank Middlesex (“Baybank”), as collecting bank, breached its G.L.c. 106, §4-207 (2) warranties by accepting for deposit and collection a$25,000.00 check drawn on the plaintiff bank which was made payable jointly to Edward Bauerband and his wife, Michelle, but which bore the forged endorsement of Michelle Bauerband.
Baybank filed a “Motion to Dismiss Pursuant to Rule 12(b) (6) or in the Alternative for Summary Judgment.” In addition to the pleadings, both parties filed affidavits, exhibits and memoranda, and the trial court properly treated the defendant’s motion as one for summary judgment pursuant to Dist./Mun. Cts. R. Civ. P., Rule 56. Stop & Shop Co. v. Fisher, 387 Mass. 889 (1983); White v. Peabody Construc. Co., 386 Mass. 121 (1982).
The material facts in this case, which is one of first impression in this Commonwealth, are undisputed.
Plaintiff Minster State Bank had along-standing banking relationship with Edward H. Bauerband, Jr. (“Edward”) and his wife, Michelle Bauerband (“Michelle”). In November, 1989, Edward contacted the plaintiff by telephone and requested a loan purportedly on behalf of himself and his wife. Minster mailed a promissory note to Edward to be executed by both him and his wife. Upon return receipt of the signed note and other loan documents, Minster issued a cashiers check in the amount of $25,000.00 payable to the order of both Edward H. Bauerband, Jr. and Michelle Bauerband, and mailed the check to their home in Wenham, Massachusetts. Edward had forged Michelle’s name to the underlying note and loan documents. Under no circumstance was Edward acting as his wife’s agent.
The check issued by the plaintiff was thereafter endorsed by Edward who forged his wife’s name as the second endorser and deposited it into his own business account which he maintained at defendant Baybank. Michelle Bauerband had no knowledge of either the loan transaction or the issuance of the check, and received no portion of the proceeds thereof. Minster brought suit against Baybank alleging breach of warranties under G.L.c. 106, §4-207(2).[3]
After hearing, the trial court issued a memorandum of decision allowing defendant Baybank’s motion for summary judgment on the basis that Baybank had been excused from the usual warranties as to Michelle Bauerband’s signature by the provisions of Uniform Commercial Code, G.L.c. 106, §3-405 (1) (a) commonly referred to as the “imposter rule.”
The sole issue presented by plaintiff Minster’s appeal is whether Baybank may, on the facts of this case, properly invoke the “imposter rule” in defense of its acceptance for deposit of the plaintiff-drawer’s check presented upon the forged endorsement of one of two joint payees.
The issue before us is so narrowly focused because of the unquestionable liability of Baybank if the “imposter rule” exception for forged endorsements is inapplicable. It is uncontroverted that in issuing the check payable to both Edward and Michelle Bauerband, plaintiff Minster’s intention was that the check would go to theBauerbands jointly and that they would both have an interest in the proceeds thereof. General Motors Acceptance Corp. v. Abington Casualty Ins. Co., 1991 Mass. App. Div. 94, 95. Because Michelle Bauerband’s signature as joint payee was unauthorized and never ratified by *63 her, such signature was inoperative as an endorsement G.L.c. 106, §3404. In cases involving forged or unauthorized endorsements, “generally the bank thatfirst paid on the check will bear the loss. This result is achieved through the operation of the Code’s warranty provisions... G.L.c. 106, §§3417, 4-207.” McCarthy, Kenney & Reidy, P.C. v. First Nat’l Bank of Boston, 402 Mass. 630, 633 (1988).
Baybank contends that it is not liable for breaching §4-207 warranties because Edward’s forgery of Michelle’s signature constituted an effective endorsement of the check in question pursuant to G.L.c. 106, §3-405(1) (a). The statute provides:
(1) An endorsement by any person in the name of a named payee is effective if
(a) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee;[4]
We concur, and hereby affirm the trial court’s allowance of Baybank’s motion for summary judgment.
In so doing, it is necessary to distinguish the court’s rationale from its otherwise correct application of §3-405 (1) (a) to the facts of this case. The trial court ruled that Edward’s actions constituted an impersonation by him “as Michelle’s agent” and that such action induced plaintiff Minster to issue the $25,000.00 check in question. The Reporter’s Comments to Uniform Commercial Code §3405 (1) (a) render it clear that the statutory term “imposter” refers to an impersonation and “does not extend to false representations that the party is the authorized agent of the payee.” Edward Bauerband’s actions in this case clearly exceeded a mere misrepresentation as to spousal agency. Edward pretended to solicit a loan from Minster in behalf of himself and his wife jointly, repeatedly forged Michelle’s name on a promissory note, on loan documents and on the cashiers check in question, and thus impersonated his wife’s participation in the transaction with Minster at every relevant stage.
Minster argues, however, in reliance on Broward Bank v. Commercial Bank of Hollywood, 547 So.2d 687 (Fla. App. 4th Dist. 1989) and similar cases,[5] that because neither Edward Bauerband nor any other “imposter” contacted or actually appeared at the plaintiff bank impersonating Michelle Bauerband, this case entails nothing more than an ordinary forged endorsement not cognizable under §3-405 (1) (a). The majority opinion in Broward held, on similar facts involving a husband’s forgery of his wife’s signature on a mortgage and note, that the wife’s signature was not effective under the §3-405(1) (a) “imposter rule” because there had been no actual impersonation of the wife. Id. at 689. Minster’s contention ignores, however, the critical statutory language of §3-405 (1) (a) which renders the section applicable to impersonation “by the use of the mails or otherwise.” As Uniform Commercial Code Comment 2 indicates:
*64 Subsection (1) (a) is new. It rejects decisions which distinguish between face-to-face imposture and imposture by mail.... The position here taken is thatthe loss regardless ofthe type offraud which the particular imposter has committed, should fall upon the maker or drawer.
Thus §3-405 (1) (a) is not restricted to situations involving the role-playing of actual, physical impostors who impersonate the individual whose signature has been forged in a face-to-face confrontation with the maker or drawer. As noted by the Supreme Court of Pennsylvania in Philadelphia Title Ins. Co. v. Fidelity-Philadelphia Trust Co., 419 Pa. 78 (1965), wherein “the imposter rule” was held to excuse the defendant bank’s payment of a check bearing a forged endorsement in a similar husband/wife swindle case:
Both the words of §3-405 (1) (a) and the official Comment thereto leave no doubt that the imposter can induce the drawer to issue him or his confederate a check within the meaning of the section even though he does not carry out his impersonation before the very eyes of the drawer.... [T]he Legislature’s use of the word ‘otherwise’ and the Comment, which suggests that results should not turn upon ‘the type of fraud which the particular imposter has committed,’ indicate that the Legislature did not intend to limit the application of the section to cases where the imposter deals directly with the drawer (face-to-face, mails, telephone, etc.). Naturally, the Legislature could not have predicted and expressly included all the ingenious schemes designed and carried out by impostors for the purpose of defrauding the makers or drawers of negotiable instruments.
Id. at 84.
The essential flaw, then, in Minster’s position is that it mistakenly equates the absence of a physical imposter with a lack of the kind of impersonation cognizable under the “imposter rule.” It is this broader concept of impersonation undertaken to defraud the maker or drawer which is the additional element distinguishing §3-405(1) (a) cases from ordinary forgeries. As noted in the Broward Bank dissenting opinion, the additional element or “something more” than a simple forgeiy may be “derived from the statutorily required presence of an ‘inducement’ in the form of the signed documents which included a note, mortgage, disclosure statement and right of rescission.” Broward Bank v. Commercial Bank of Hollywood, supra at 690 (dissenting opinion). In the instant case, Edward Bauerband’s actions went well beyond merely forging his wife’s name on the back of Minster’s check. Such forgery was indeed only the final stage of a fraudulent scheme conceived and implemented by Edward which began with creating the false impression that his wife jointly sought a bank loan and would be jointly liable therefor; which required forging her name on a promissory note and other loan documents; and which necessarily entailed impersonating her participation in every aspect of the transaction to insure that his scheme would culminate in his ultimate receipt of the $25,000.00 in question.
Such impersonation of Michelle Bauerband renders Edward’s forgery of her signature an effective endorsement of the check made and drawn upon Minster pursuant to G.L.c. 106, §3-405(1) (a). Baybank is thus excused from the customary G.L.c. 106, §4-207 collecting bank warranties, and the loss of the sum in question must be borne by Minster. This result is consistent with the underlying rationale of the Uniform Commercial Code “imposter rule” which, encompasses the maxim “that as between two innocent [parties], the one whose act was the cause of the loss should bear the consequences.” Broward Bank v. Commercial Bank of Hollywood, supra at 689. It was Minster which enjoyed a long-standing banking relationship with both Bauerbands, which was in a position to detect the initial forgery of Michelle’s *65 signature on the promissory note and loan documents, which was first deceived by Edward’s impersonation of his wife’s involvement and which ultimately delivered the check in question to the “imposter.” See Id. at 689. It is essential to note that such analysis of Minster’s position is not tantamount to a finding of negligence on its part as common law negligence is irrelevant under §3-405 of the Code. McCarthy, Kenney & Reidy, P.C. v. First Nat’l Bank of Boston, supra at 633. Rather, the appropriate Uniform Commercial Code inquiry focuses on which party, within the Code’s system for allocating risk of loss from forged instruments, was in a better position to protect itself.
Accordingly, there being no error in the trial court’s allowance of Baybank’s motion for summary judgment on Count III, the report is hereby dismissed.

No issue is raised on this appeal withrespeetto Counts land II of Minster’s complaintwhich were brought against defendant Edward Bauerband who was defaulted in the trial court.

 Sections 4-207 (2) (a) and (b) provide: “ (2) Each customer and collecting bank who transfers an item and receives a settlement or other consideration for it warrants to his transferee and to any subsequent collecting bank who takes the item in good faith that (a) he has a good title to the item or is authorized to obtain payment or acceptance on behalf of one who has a good title and the transfer is otherwise rightful; and (b) all signatures are genuine or authorized;...”

 Subsections (1) (b) and (1) (c) state: “(b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.”
Subsection (1) (b) protects those who receive checks drawn by a maker who never intended thatthe named payee, whether fictitious or real, would receive the proceeds thereof. Subsection (1) (c) encompasses the “padded payroll” embezzlement case where an agent or employee prepares the check for the drawer or furnishes the name of a payee who has no interest in the proceeds. See Uniform Commercial Code Comments 2 and 3, G.L.c. 106, §3-405.

There is little case law on the “imposter rule” of §3405(1) (a), and many of the cases cited by both parties are decisions of single trial judges sitting without juries. We have confined our analysis to the few factually apposite opinions of state appellate courts.