*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 07a0018p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FERNANDO TATIS,

　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

US BANCORP,

　　　　　　　　*Defendant-Appellee.*

No. 06-3105

>

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 03-00378—Sandra S. Beckwith, Chief District Judge.

Argued: October 31, 2006

Decided and Filed: January 16, 2007

Before: CLAY and SUTTON, Circuit Judges; SHARP, District Judge.[*]

---

**COUNSEL**

**ARGUED:** Steven G. Schwartz, SCHWARTZ AND HORWITZ, Boca Raton, Florida, for Appellant. Eric W. Richardson, VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Steven G. Schwartz, SCHWARTZ AND HORWITZ, Boca Raton, Florida, Kenneth G. Hawley, Cincinnati, Ohio, for Appellant. Eric W. Richardson, Nathaniel Lampley, Jr., VORYS, SATER, SEYMOUR & PEASE, Cincinnati, Ohio, for Appellee.

---

**OPINION**

---

　　　SHARP, District Judge. Plaintiff-Appellant, Fernando Tatis ("Tatis"), appeals the district court's entry of summary judgment in favor of Defendant-Appellee US Bank in this diversity action for breach of contract, negligence, and violation of Ohio law based on US Bank's payment of forged checks drawn on Tatis's account. For the following reasons, we affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

　　　Tatis, a native of the Dominican Republic, was a professional baseball player with the Montreal Expos. He opened several bank accounts with US Bank. US Bank is a federally regulated

---

[*]The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by designation.

and licensed financial institution organized under the laws of the state of Ohio. It has a "Professional Sports Division" within the bank that provides financial services to professional athletes.

On April 4, 2001, Tatis opened a personal checking account – No. 792822785 or "the checking account" – and received a depositor agreement setting forth terms and conditions for that account. Tatis requested that the checking account be linked to other accounts held by Tatis at US Bank to provide overdraft protection. Tatis was the signatory listed on the checking account.

According to Tatis, at the time he opened the checking account, he elected to have US Bank keep his bank statements. He filled out a signature card and directed that his statements be kept at US Bank's Professional Sports Division. US Bank then sent the checks to Tatis's residence in Montreal, Canada. Juan Carlos Ortiz Paredes, an employee of Tatis, was present at Tatis's residence when the checks arrived. Paredes took the checks and, from August 2001 to November 2001, wrote numerous, unauthorized checks to various merchants, to cash, and to himself.

US Bank made transfers from Tatis's other accounts into the checking account to cover overdrafts resulting from the checks forged by Paredes. On two separate occasions between August 2001 and January 2002, Tatis did not have sufficient funds in either his checking or investment account to cover the overdrafts caused by Paredes's forged checks. US Bank contacted Tatis's agent, Impact Sports, regarding the need to deposit funds with US Bank to cover the overdrafts. Impact Sports contacted Tatis regarding the overdrafts, and Tatis wired sufficient funds to cover the overdrafts at US Bank.

For each month the checking account was open, US Bank generated a monthly statement for the account. Copies of those statements were kept by John Hayes of US Bank's Professional Sports Division as Tatis had requested. Tatis did not request to see his bank statements until December 2001. The checking account statement reflecting the first items allegedly forged – in August 2001 – was generated no later than September 2001.

In January 2002, Tatis raised the issue of the alleged forgeries for the first time, approximately five months after the first forgery in August 2001 and more than 120 days after the August bank statements were generated in September 2001. After the initial forgery, Paredes forged several more checks and, by December 2001, had spent the money, purchased merchandise with the money, and transferred funds to third parties.

On May 22, 2003, Tatis filed suit against US Bank, alleging violations of Ohio Revised Code ("Ohio Rev. Code") § 1304.35, breach of the depositor agreement, and negligence. On December 6, 2005, the district court granted the motion for summary judgment filed by US Bank. On December 16, 2005, Tatis moved for reconsideration of the district court's December 6, 2005 grant of summary judgment. The district court denied that motion, and this appeal followed.

## II. STANDARD OF REVIEW

This court reviews the district court's grant of summary judgment *de novo*. *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 274 (6th Cir. 2003). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see* FED. R. CIV. P. 5(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-1211 (6th Cir. 1984).

### III. DISCUSSION

Under Ohio Rev. Code § 1304.35, a customer must notify the bank of any unauthorized checks within thirty days from the date statements were made available to him. Specifically, Ohio Rev. Code § 1304.35 states:

> (C)  If a bank sends or makes available a statement of account or items pursuant to division (A) of this section, *the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized* . . . because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, *the customer should reasonably have discovered the unauthorized payment, the customer must promptly notify the bank of the relevant facts.*

(emphasis added).

If a customer fails to notify the bank of the unauthorized checks within the thirty-day time period, he is precluded from asserting recovery of his losses from the bank. Specifically, Ohio Rev. Code § 1304.35 states:

> (D)  If the bank proves that the customer failed with respect to an item to comply with the duties imposed on the customer by division (C) of this section, *the customer is precluded from asserting either of the following against the bank*:
> (1)  *The customer's unauthorized signature or any alteration on the item* if the bank also proves that it suffered a loss by reason of that failure;
> (2)  *The customer's unauthorized signature or alteration by the same wrongdoer on any other item* paid in good faith by the bank *if* the payment was made before the bank received notice from the customer of the unauthorized signature or alteration *after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank.*

(emphasis added). In light of the requirements set forth in the provisions outlined above, Tatis cannot recover for the losses caused by the forgeries as long as the statements were "made available."

Tatis argues that the statements were not "made available" and that there are questions of fact regarding that issue. He argues that the district court relied on conflicting facts in making its determination. But the record reveals that Tatis knew that monthly statements were being generated and he elected to have those monthly statements kept by US Bank at its Professional Sports Division. There is also no evidence that the bank would not provide the statements upon his request or otherwise make the statements available. Under these circumstances, we find that the statements were "made available" under Ohio Rev. Code § 1304.35.

Additionally, the depositor agreement between Tatis and US Bank required Tatis to review his statements and report forgeries no later than thirty days after those statements were made available for review. The agreement provides:

> STATEMENTS - You must examine your statement of account with "reasonable promptness." If you discover (or reasonably should have discovered) any unauthorized signatures or alterations, you must promptly notify us of the relevant

facts.  As between you and us, if you fail to do either of these duties, you will have to share the loss with us, or bear the loss entirely yourself (depending on whether we used ordinary care and, if not, whether we substantially contributed to the loss).  The loss could be not only with respect to items on the statement but other items with unauthorized signatures or alterations by the same wrongdoer.

You agree that the time you have to examine your statement and report to us will depend on the circumstances, but will not, in any circumstances, exceed a total of 30 days from when the statement is first sent or made available to you.

You further agree that if you fail to report any unauthorized signatures, alterations, forgeries, or any other errors in your account within 60 days from when we first send or make the statement available, you cannot assert a claim against us on any items in that statement, and as between you and us the loss will be entirely yours.  This 60 day-limitation is without regard to whether we use ordinary care.  The limitation in this paragraph is in addition to that contained in the first paragraph of this section.

Ohio courts have upheld contractual limitations of the time in which a depositor must notify the bank of a forgery.  *See, e.g., Crescent Women's Med. Group, Inc. v. KeyCorp*, 806 N.E.2d 201, 203-204 (2003).  Tatis failed to report the forgeries within the prescribed thirty day time period.  Thus, pursuant to the depositor agreement, Tatis is precluded from asserting a claim against US Bank for those forged items.

Tatis is also precluded from recovering for the forgeries that occurred within the thirty days prior to his giving notice because of his earlier failures to review his statements and report the forgeries.  Ohio Rev. Code § 1304.35(D)(2) states:

> D)     If the bank proves that the customer failed with respect to an item to comply with the duties imposed on the customer by division (C) of this section, *the customer is precluded from asserting either of the following against the bank*: . .
>
> > (2)     *The customer's unauthorized signature or alteration by the same wrongdoer on any other item* paid in good faith by the bank *if* the payment was made before the bank received notice from the customer of the unauthorized signature or alteration *after the customer had been afforded a reasonable period of time, not exceeding thirty days, in which to examine the item or statement of account and notify the bank*.

(emphasis added).  "The underlying justification for this provision is simple: one of the most serious consequences of the failure of a customer to timely examine its statement is that it gives the wrongdoer the opportunity to repeat his misdeeds."  *Spacemakers of Am. v. SunTrust Bank*, 609 S.E.2d 683, 687 (Ga. App. 2005).  Tatis had a duty to promptly examine his monthly statements and report to US Bank any unauthorized transactions.  Because Tatis failed to report the first forged item within thirty days, he is not only precluded from recovering for that transaction but also for any additional items forged by the same wrongdoer.

Finally, because Tatis's claims are barred under Uniform Commercial Code ("U.C.C.") provisions, his common law claims are also barred.  Generally, parties may not rely on a common law action to avoid the clear mandates of the U.C.C.  The district court correctly held that Tatis could not recover on an alternate, common-law theory of liability.

For these reasons, we AFFIRM the district court's decision.