Fabricant, Judith, J.
This action arises from negotiation of a check with a forged signature purporting to be that of the plaintiff, Dane Cook. Seeking to recover his lost funds, Cook has brought this action against three financial institutions. Presently before the Court is the motion to dismiss of the defendant Bank of America (the bank). For the reasons that will be explained, the motion will be allowed.
BACKGROUND
For purposes of the present motion, the Court accepts as true all well-pleaded factual allegations of the complaint, but disregards conclusions and characterizations asserted therein. See Sisson v. Lhowe, 460 Mass. 705, 707 (2011); Welch v. Sudbury Youth Soccer Ass’n, Inc., 453 Mass. 352, 354 (2009); Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991). Considered in that manner, the complaint, filed on November 23, 2011, provides the following facts.
Cook is a comedian, actor and entertainer. Darryl McCauley, Cook’s half-brother, worked as his business manager from the early 1990s until late 2008. In that capacity McCauley managed Cook’s financial affairs. On January 31, 2007, Cook established the Great Dane Revocable Trust (the trust) to manage Cook’s assets and income. Both Cook and McCauley were trustees, but Cook was the sole beneficiary. On April 5, 2007, the trust opened a money market fund account with Fidelity Investments Institutional Operations Company, Inc. (the Fidelity trust account). The Fidelity trust account had a check-writing feature, with State Street Bank and Trust Company as the bank for the associated checking account. McCauley had authority to sign checks on the Fidelity trust account and to transfer funds from it, but had no authority to use trust funds for his personal benefit.
The trust also had a checking account at Bank of America, as did Cook personally and other business entities established by and for Cook. The complaint alleges “on information and belief’ that the bank had signatures on file for both Cook and McCauley in connection with Cook’s personal and business accounts. McCauley and his wife also had personal accounts at the bank.
The bank assigned a private client manager to manage its relationship with Cook and to oversee the various accounts he and his entities held. The private client manager interacted with McCauley in connection with various transactions on behalf of Cook and his entities. The complaint alleges “on information and belief’ that the bank’s private client manager was aware of “the scope and limitations on McCauley’s authorization” and “the purpose and beneficiary of the Trust,” and was also aware of the McCauleys’ personal accounts at the bank. The complaint further alleges, again “on information and belief’ that the bank’s private client manager was aware of “the scope and limitations on McCauley’s authorization” and “the purpose and beneficiary of the Trust,” and was also aware of the McCauleys’ personal accounts at the bank.
On November 24, 2008, McCauley, or someone on his behalf, wrote a check on the Fidelity trust account, in the amount of $3,000,000, to McCauley, with a forged signature purporting to be that of Cook. On the same day, McCauley presented the forged check to the bank for deposit into his own personal account. The bank accepted the forged check and presented it to State Street for collection.[1] State Street processed the check, debiting the Fidelity trust account in the amount of $3,000,000 on or about November 25, 2008.
Sometime within the next week or so (the complaint does not specify a date), McCauley informed the bank that he intended to withdraw $3,000,000 in cash from his account. On December 3, 2008, a senior investigator at the bank faxed a copy of the check to Fidelity’s Investigative Services Department, with the following notation on the fax cover sheet: “RE: good check?”[2] The complaint alleges “on information and belieF that “either (the bank] did not receive a response from Fidelity, or Fidelity provided a response without conducting a reasonable inquiry to determine the validity of the check or the authorization of the maker of the check.”
On December 4, 2008, the private client manager assigned to the Cook account relationship sent McCauley an email discussing the process for picking up the requested amount, but urging McCauley to reconsider his plan to take the funds in cash, commenting that “we’d be more than happy to wire the funds for you or provide you a bank check.” On December 5, 2008, McCauley withdrew $3,000,000 in cash from his personal checking account. He immediately left Massachusetts, but was arrested a year later, and has since been convicted and sentenced on criminal charges arising from the check.
Cook filed this action on November 23, 2011, in his individual capacity and as trustee of the trust.'With respect to this defendant, he asserts two counts: negligence in accepting and processing the check and allowing withdrawal of the proceeds (Count I); and violation of G.L.c. 106, §4-202 (Count II). The bank moves to dismiss both Counts against it.
DISCUSSION
A motion to dismiss, “argues that the complaint fails to state a claim upon which relief can be granted.” Jarosz v. Palmer, 436 Mass. 526, 529 (2002), quoting J.W. Smith & H.B. Zobel, Rules Practice §12.16 (1974). In considering such a motion, the Court takes as true the allegations of the complaint, as well as such inferences as may be drawn from them in favor of the non-moving party. Nader v. Citron, 372 Mass. 96, 98 *334 (1977). However, the court disregards legal conclusions cast in the form of factual allegations. Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). To survive the motion, the complaint must contain “allegations plausibly suggesting (not merely consistent with)” an entitlement to relief, and “must be enough to raise a right to relief above the speculative level.” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 557 (2007).
1. Count I: Negligence.
Count I alleges, in substance, that the bank was negligent in accepting the forged check and allowing McCauley to withdraw the funds, given the information the bank, as an overall entity, had about Cook’s affairs and McCauley’s role in them. The bank should have suspected forgery, Cook contends, based on the amount of the check, the fact that it was drawn on a trust account and deposited into McCauley’s personal account, and McCauley’s subsequent request to withdraw the funds in cash. The bank could and should have identified the forgery, the theory goes, by comparison of the signature on the check with Cook’s signature on file. Indeed, the theory continues, the bank did in fact entertain suspicions, as reflected in its inquiry to Fidelity and its attempt to persuade McCauleynot to take the funds in cash.[3]
Check collection is governed by the UCC [Uniform Commercial Code], a statutory framework designed to implement, among other things, a national, uniform system of check collection . . . Where a UCC provision specifically defines parties’ rights and remedies, it displaces analogous common-law theories of liability . . . Otherwise, banks would face a motley patchwork of liability standards from State to State.
Gossels v. Fleet Nat’l Bank, 453 Mass. 366, 370 (2009) (internal quotations and citations omitted); see Arkwright Mut. Ins. Co. v. State St. Bank & Trust Co., 428 Mass. 600, 604-06 (1998); Jensen v. Essexbank, 396 Mass. 65, 66 (1985); Prestige Impts. v. S. Weymouth Sav. Bank, 75 Mass.App.Ct. 773, 785 n.13 (2009) (“[t]he common law does not roam freely over and through specific Code provisions but supplies a loss-allocation framework only when specific Code provisions do not”); see also Tatis v. U.S. Bancorp, 473 F.3d 672, 677 (6th Cir. 2007) (“parties may not rely on a common law action to avoid the clear mandates of the UCC”); Wetherill. v. Putnam Invs., 122 F.3d 554, 558 (8th Cir. 1997) (UCC bars common-law claims based on fraudulently signed or indorsed checks); Evans Tire & Serv. Ctrs., Inc. v. Bank of Am., 2012 U.S. Dist. LEXIS 35295, at *16 -17 (S.D.Cal. Mar. 14, 2012); Advance Dental Care, Inc. v. Suntrust Bank, 816 F.Sup.2d 268, 270 (D.Md. 2011); Williams v. Metro. Life Ins. Co., 367 F.Sup.2d 844, 849 (M.D.N.C. 2005); Gress v. PNC Bank, Nat’l Assn., 100 F.Sup.2d 289, 292 (E.D.Pa. 2000); compare Mackin Eng’g. Co. v. Am. Express Co., 2010 U.S. Dist. LEXIS 108395, at *10-11 (W.D.Pa. Oct. 12, 2010) (when no comprehensive UCC remedy exists, principles of law and equity supplement its provisions).
The bank contends that the UCC does provide directly for claims of the nature presented here, in G.L.c. 106, §3-307, and that Cook’s allegations do not establish a cause of action under that provision. The Court agrees. Cook’s claim against the bank is to recover the proceeds of the check. The UCC provides, in G.L.c. 106, §3-306:
A person taking an instrument, other than a person having rights of a holder in due course,, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. A person having rights of a holder in due course takes free of the claim to the instrument . . .
Thus, under §3-306, the bank’s liability depends on whether it has the rights of a holder in due course.
Under G.L.c. 106, §3-302(a)(2)(v), a holder in due course is one who takes an instrument that “does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity,” and does so for value, in good faith, “without notice that the instrument contains an unauthorized signature . .. [,]” and “without notice of any claim to the instrument described in section 3-306.” Cook does not contend that the check bore apparent evidence of forgery or was otherwise so irregular as to call into question its authenticity, nor does he allege any bad faith, or any lack of value given for the check. He does contend that the check bore an unauthorized signature purporting to be his, and that the bank could have so determined by comparison with his check on file in connection with other accounts. As noted supra, however, the facts alleged indicate that McCauley was authorized to sign checks on the account in McCauley’s own name. McCauley’s lack of authority related not to his signing the check, but to his use of the proceeds. The forgery may be evidence of McCauley’s malfeasance, and of his effort to avoid detection, but it is secondary to the conduct that caused harm to Cook.[4]
Thus, the question on which the bank’s liability depends is whether the bank accepted the check with notice of Cook’s claim that McCauley was not authorized to draw this particular check, to himself, and to deposit it into his personal account. General Laws c. 106, §3-307(b)(3) determines what constitutes notice of such a claim. That subsection provides, in pertinent part: “If an instrument is issued by the represented person or the fiduciary as such, and made payable to the fiduciary personally, the taker does not have notice of the breach of fiduciary duty unless the taker knows of the breach of fiduciary duty.” Under G.L.c. 106, §1-201(25), “[a] person ‘knows’ or has *335 ‘knowledge’ of a fact when he has actual knowledge of it.” Thus, the question is whether the bank knew of McCauley’s breach of fiduciary duty when it accepted the check — not whether it could or should have known upon diligent inquiry, or in the exercise of due care, but whether it actually knew.
Section §1-201(27) governs knowledge within an organization, as follows . . . knowledge . . . received by an organization is effective for a particular transaction from the time when it is brought to the attention of the individual conducting that transaction, and in any event from the time when it would have been brought to his attention if the organization had exercised due diligence. An organization exercises due diligence if it maintains reasonable routines for communicating significant information to the person conducting the transaction and there is reasonable compliance with the routines. Due diligence does not require an individual acting for the organization to communicate information unless such communication is part of his regular duties or unless he has reason to know of the transaction and that the transaction would be materially affected by the information.
(Emphasis added.) Under this provision, the pertinent knowledge is that of the particular individual who accepted the check — that is, the teller — rather than the bank as a whole, unless due diligence in the circumstances would have required others in the bank to communicate the pertinent information to that individual. See G.L.c. 106, §3-307 cmts. 1-2; see also Jelmoli Holding, Inc. v. Raymond James Fin. Servs. Inc., 470 F.3d 14, 19 (1st Cir. 2006).
Nothing in the facts alleged here indicates that the individual who accepted the check from McCauley had knowledge that his transaction of the check was in breach of his fiduciaiy duty to Cook; indeed, nothing identifies that individual, or provides any indication that that individual knew of any fiduciary relationship, or of any other circumstances related to the check beyond what appeared on its face. Nor does anything in the facts alleged indicate that anyone else at the bank, such as the private client manager, knew or had reason to know of the transaction at the time it occurred. Nor does anything indicate that it was a part of any such person’s regular duties to notify all tellers at all bank branches of fiduciary relationships such as that between McCauley and Cook, or of any limits on a fiduciary’s authority. Without such facts, the complaint fails to allege that the bank took the check as anything other than a holder in due course, free of Cook’s claim. Count I must therefore be dismissed.
2. Count II: G.L.c. 106, §4-202(a).
Count II alleges that the bank breached its duty under c. 106, §4-202(a), “to exercise ordinary care in accepting the check for deposit and processing it for collection.” Subsection (a) of that statute provides:
A collecting bank must exercise ordinary care in:
(1) presenting an item or sending it for presentment;
(2) sending notice of dishonor or nonpayment or returning an item other than a documentary draft to the bank’s transferor after learning that the item has not been paid or accepted, as the case may be;
(3) settling for an item when the bank receives final settlement; and
(4) notifying its transferor of any loss or delay in transit within a reasonable time after discovery thereof.
A bank “presents” a check when it submits it for payment to the bank on which it is drawn. See G.L.c. 106, §§3-501, 4-104(c). Nothing in the facts alleged suggests any failure on the part of the bank to exercise due care in performing that function; to the contrary, the facts alleged indicate that the bank submitted the check to State Street promptly, and that State Street paid it promptly. Cook’s complaint is with the bank’s acceptance of the check, not with its presentment of it. Section 4-202 provides no cause of action for acceptance of a check. See generally, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Devon Bank, 702 F.Sup. 652, 657 (N.D.Ill. 1988) (‘The duty of ordinary care established in §4-202(1) (b) seems to run only to the collecting bank’s transferor . . .”) (applying Illinois statute).
CONCLUSION AND ORDER
For the reasons stated, Defendant Bank of America, N.A.’s Motion to Dismiss Counts I and II of Plaintiffs Complaint is ALLOWED.

 The complaint alleges “on information and belieF that comparison of the signature on the check with Cook’s signature on file “would have revealed that the check was forged.” As indicated supra, McCauley had authority to sign checks on the account himself, in his own name, but did not have authority to apply funds from the account to his own personal use. The complaint does not identify, either by name or by position, the bank employee who accepted the check, and does not allege any awareness by that individual of any information regarding McCauley or his relationship to Cook. It also does not indicate any involvement by the private client manager in acceptance of the check.

 The complaint attributes this inquiry to suspicion triggered by McCauley’s request to withdraw the funds in cash; it alleges “on information and belieF that this request, along with the amount of the check and the fact that it was drawn on a trust account and purportedly signed by Cook, “caused [the bank] to question the legitimacy of the check and whether the check was, in fact, a forgery or was made with authorization."

 Cook’s factual theory, in the Court’s view, is less than fully consistent with the sequence of events as he alleges them. McCauley’s request for cash occurred some time after the deposit, not contemporaneously with it. The bank’s inquiry to Fidelity occurred after Fidelity had already withdrawn the funds from the trust account to make the payment. The private client manager’s communication to McCauley regarding his request for cash suggests hesitancy only as to the form of the withdrawal, not the fact of it.

 Tothe extent that Cook’s claim is based on acceptance of a check with a forged signature, the claim is directed at the wrong bank. See McCarthy, Kenney & Reidy, P.C. v. First National Bank of Boston, 402 Mass. 630, 633 (1988) (‘The Code has a system for allocating losses arising from forgeries on checks. As a general rule, when a drawer's signature is forged, the drawee bank will bear the loss”) (emphasis in original); see also Stone & Webster Eng’g Corp. v. First Nat'l Bank & Trust Co., 345 Mass. 1, 7-9 (1962) (drawer has no right of action for conversion against collecting bank for acceptance of check with forged indorsement).